UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANTHONY REYES, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 07-cv-1906 (JCH) |
| v. | : | |
| | : | |
| DAVID E. WOODRUFF, | : | JUNE 1, 2009 |
| Defendant. | : | |

**RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 41)**

**I.    INTRODUCTION**

Plaintiff, Anthony Reyes, brings this lawsuit against the defendant, David Woodruff, a New Britain, Connecticut police officer, alleging that Woodruff conducted an unreasonable search and seizure and acted jointly with other officers to arrange for the transfer of unlawfully seized property to another state agency. Reyes claims Woodruff's actions violated of 42 U.S.C. §§1983 and 1988. Woodruff moves for summary judgment on Reyes's claims.

**II.   STANDARD OF REVIEW**

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Engineering Corp., 221 F.3d 293, 300 (2d Cir. 2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

Generally, when assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

## III.   FACTUAL BACKGROUND[1]

At all relevant times, Woodruff was a patrol officer within the traffic division of the New Britain Police Department. At the police department, he was under the supervision of Sergeant Gary Chute. Anthony Reyes, at all relevant times, was the owner and president of a company known as Prestige Automotor, LLC, which operated an automobile sales and service business in New Britain, Connecticut.

In early 2005, the New Britain Police Department requested the Connecticut Department of Motor Vehicle's Connecticut State Police Automobile Task Force's assistance in investigating a large number of vehicles in Connecticut with New Hampshire license plates. Sergeant Howard Koenig, of the Connecticut Department of Motor Vehicles ("DMV"), was the liaison between the DMV and the New Britain Police

---

[1] For the purposes of the instant Motion, the court accepts facts undisputed by the parties as true and resolves disputed facts in favor of the non-moving plaintiff, where there is evidence to support his allegations.

Department. His contact at the New Britain Police Department was Sergeant Chute.

On June 15, 2005, an Affidavit and Application for a Search and Seizure Warrant ("Warrant") was completed and applied for by Officers Woodruff and John Prisavage. The Warrant was approved by a judge of the Superior Court of Connecticut to search for property belonging to Reyes that would constitute evidence of "title washing." Title washing is an illegal practice which aims to avoid the requirements of safety inspections for, and increase the resale value of, motor vehicles.[2] On June 21, 2005, the New Britain Police Department executed the Warrant and seized file cabinets and boxes filled with business records as well as computers and hard drives.

On September 23, 2005, Sergeant Chute left a voicemail message for Sergeant Koenig informing him that the New Britain Police Department would be returning Reyes' property that they had seized pursuant to the Warrant. Sergeant Koenig was told by representatives of the police department that he could not take Reyes' property until the property was returned to Reyes and was under Reyes' control. On September 26, Sergeant Koenig went to the police department looking for Sergeant Chute, but he was not there. Sergeant Koenig returned the next day and was told by Sergeant Chute that the property was going to be returned to Reyes on that day.

On September 27, 2005, pursuant to a court order, the New Britain Police Department returned Reyes' property to his premises. The officers, including Woodruff,

---

[2] Specifically, the Affidavit indicated that the search would constitute evidence of the following offense: Title Fraud in violation of Connecticut General Statute section 14-196(a); failure to provide purchaser with motor vehicle title in violation of Connecticut General Statute section 14-196(b); larceny in various degrees in violation of Connecticut General Statute sections 53(a)-122 through 53a-125b; and forgery in the second degree in violation of Connecticut General Statute section 53a-139.

placed Reyes' property by the bay doors of his garage. After the officers returned the property, Officer Prisavage had Reyes sign a Record of Release to evidence acceptance of the property and transfer custody of it back to him.

After the officers completed their return of the property to Reyes, Sergeant Koenig served an Investigative Demand on Reyes and asked Reyes to sign a document stating that the documents he was searching and taking were accurate to the best of his knowledge and belief. Sergeant Koenig then went outside and selected which boxes of Reyes' property fit the description in the Investigative Demand. Specifically, he was looking for purchase orders, invoices, certificates of title, and repair bills. Some of the officers helped Sergeant Koenig moved the boxes to his car.

Reyes asserts that the officers, including Woodruff, seized property that was beyond the authority of the Warrant. Additionally, he asserts that Woodruff conspired to cause Reyes' property to be turned over to Koenig.

## IV.  DISCUSSION

### A.  Property seized beyond authority of the Warrant

Reyes asserts that Woodruff seized property that exceeded the scope of the Warrant. He states that a "simple comparison" of the Warrant with the list of seized property that was returned to Reyes "proves conclusively" that the defendant seized property not authorized by the Warrant. Mem in Opp. at 5.

Before addressing the merits of this argument, the court notes that, before granting the defendant leave to file a Motion for Summary Judgment, the parties stipulated that the sole issue at trial would be limited to whether Woodruff unlawfully permitted Koenig to search and seize Reyes' records on September 27. Reyes argues

that the stipulation is now moot in light of a mistrial obtained by Woodruff. Id. at 1 n.1. However, there could not have been a mistrial because the court never swore in the jury, and the trial had not commenced.[3] Thus, there was not a mistrial and Reyes has waived any claims outside the scope of the stipulation.

Even assuming Reyes has not waived this claim, it still fails as a matter of law. The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Reyes does not appear to challenge the validity of the Warrant. However, it bears noting that the Warrant in this case was based on probable cause, as determined by the Superior Court Judge. It was also supported by a sworn affidavit describing with particularity the basis for the application and the place to be searched and the type of evidence to be sought during the search. See Groh v. Ramirez, 540 U.S. 551, 557 (2004).

Reyes argues that comparing the Warrant to the list of items returned to him proves that the officers took more than they were authorized to. Indeed, the particularity requirement of the Fourth Amendment "prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." Marron v. United States, 275 U.S. 192, 196 (1927); see also United States v. Heldt, 668 F.2d 1238, 1266 (D.C. Cir. 1981). Thus, in general, only items particularly mentioned in the warrant may be seized. However,

---

[3] Trial was set to commence on March 31, 2009, for which a jury was chosen on March 3, 2009. However, on March 17, 2009, Woodruff moved to continue the trial and, absent objection, the court granted the Motion. The court also scheduled another jury selection and trial date in June. Additionally, the court granted defendant leave to file a motion for summary judgment before trial. See Doc. No. 40.

Reyes does not specifically state what was taken that exceeds the authority of the Warrant.  Further, upon review of the two documents, it does not appear that the officers exceeded the scope of the Warrant.  The Warrant granted the officers the authority to seize the following things from Reyes:

> "All records generated through the normal course of business, including, but not limited to: records written or otherwise regarding the buying and selling of vehicles, receipts, ledgers, files, motor vehicles registration certificates, motor vehicle titles, motor vehicle identification numbers, motor vehicles, motor vehicle parts, motor vehicle accessories, computers, computer systems as defined in CSG 53a-250(7) and all data contained therein, CD and CDR disks, diskettes, audio tapes, video tapes, and all other computer related storage media and all data contained therein including text files, electronic mail, and graphics files; computer printouts of computer chats or e-correspondence, and any other writings.

Mem. in Supp. Exh. E.  The New Britain Police Department Property Card, which itemizes the property seized by the officers, states that the following things were seized and returned to Reyes:

> Tan File Cabinet containing various business records, Blk file cabinet containing various business records, papers from person of Anthony Reyes, Compaq Presario Computer Ser # MXK441PPT, Envision Monitor Ser #T7XV51BA03604, Gateway Computer Ser# 3501234, CDS, Disks, Flash memory card, Dell Computer Ser #DMBFW01, External Hard Drive Ser #WCAJ92047108, Numerous disks, computer router, printer, 5 boxes various business records, and 1 Quickbooks.

Mem. in Supp. at Exh. 3.  Nothing in this list exceeds the scope of the Warrant.[4]  At oral argument, Reyes' counsel suggested that the "papers from person of Anthony Reyes" exceeded the scope of the Warrant.  However, Reyes did not provide any Affidavit describing these documents nor did he explain how they exceeded the scope of the

---

[4] At oral argument, there was a suggestion that the taking of the monitor exceeded the scope of the Warrant, but the Warrant specifically permits the seizure of computers which include monitors.

warrant or how they were produced to the police officers.  Reyes having not set forth any evidence, let alone specific evidence, that would allow a jury to find that the seizure of these records exceeded the authority of the Warrant, this claim fails as a matter of law.

Moreover, "[e]vidence will not be suppressed due to a lack of specific particularity with respect to an item seized if the actions taken by the police do not resemble a general search."  Sostre v. County of Suffolk, 06-0320 (LDW) (ETB) 2008 U.S. LEXIS 77849 *7 (E.D.N.Y 2008) (citing United States v. Shi Yan Liu, 239 F.3d 138, 140 (2d Cir. 2000)).  "[A] search that greatly exceeds the bounds of a warrant is not conducted in good faith is essentially indistinguishable from a general search."  Shi Yan Liu, 239 F.3d at 141 (citing United States v. Dzialak, 441 F.2d 212, 217 (2d Cir 1971), in which case the court found a general search when the officers "spent more than four hours ransacking a house for any possible incriminating evidence, and of the items seized, those which were not described in the warrant far outnumbered those described.").  There is no evidence that Woodruff so greatly exceeded the search that the items seized "far outnumbered those described."

Based on the evidence in the record, there is no genuine issue of material fact with regard to the property seized and, as such, a reasonable jury could not find that Woodruff exceeded the scope of the Warrant.

B.     Records Seized by the DMV

Reyes argues that Sergeant Koenig unlawfully seized his property.  Further, he argues that Woodruff had a duty to stop Sergeant Koenig from seizing the property.  First, Reyes fails to present any evidence that would support a claim that what Koenig

did was unlawful. When Reyes' property was returned to him on September 27, 2005, Reyes signed a release stating that the property was being returned to him. It was only after the property was legally returned to Reyes that Koenig served an investigative demand on him, which Reyes signed, and Sergeant Koenig seized his business records. Reyes asserts that the actions of Sergeant Koenig were unlawful but does not articulate how or why.[5] Thus, because Reyes has failed to establish that what Koenig did was unlawful, Woodruff cannot be held liable for not stopping him. Gagnon v. Ball, 696 F.2d 17, 21 (2d Cir. 1982).

Reyes also asserts in his Complaint that Woodruff "conspired" with other officers to cause his records and property to be turned over to officials of the DMV. Compl. ¶ 9. However, there is nothing in the record evidencing that Woodruff was part of any such conspiracy. "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). With respect to the first factor, Reyes has not adduced any evidence demonstrating that Woodruff acted in concert with another state actor. Sergeant Koenig communicated only with Sergeant Chute with regard to the return of the documents. In other words, there is no evidence that Koenig, or anyone else at the DMV, ever communicated with Woodruff. Sergeant Chute states that he communicated with Sergeant Koenig and informed him when Reyes' property would be

---

[5] It bears noting that, at oral argument, Reyes' counsel conceded that there is nothing in the record before the court that suggests Koenig committed a constitutional violation.

returned. See Chute Aff. ¶ ¶ 9 & 12. Moreover, Woodruff was not told by Sergeant Chute that they would be returning Reyes' property until the morning they returned it. Because the record is void of any evidence that Woodruff and Sergeant Koenig ever communicated with each other, let alone about Reyes' property, a reasonable jury could not find in Reyes' favor on this conspiracy claim.[6]

Accordingly, because Reyes has not set forth any evidence on which a trier of fact could conclude that Woodruff either exceed the scope of the search warrant or conspired with other officers to have Reyes' records turned over to the DMV, Woodruff is entitled to summary judgment.[7]

## V.      CONCLUSION

For the foregoing reasons, the court **GRANTS** Woodruff's Motion for Summary Judgment (Doc. No. 41). Judgment shall enter for the defendant, and the Clerk shall close the case.

**SO ORDERED**.

Dated at Bridgeport, Connecticut, this 1st day of June, 2009.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[6] It bears noting that Reyes has failed to show evidence of an unconstitutional injury. Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Thus, not only has Reyes failed to produce any evidence that Woodruff acted in concert with Koenig; he also failed to produce any evidence that what Sergeant Koenig did was unconstitutional.

[7] Because summary judgment is granted in favor of Woodruff, the court need not reach his qualified immunity defense.